1 | Edward F. Mitchell    (California State Bar # 135557)
LAW OFFICES OF EDWARD F. MITCHELL
2 | 1750 Montgomery Street
San Francisco, California 94111
3 | (415) 265-4220          DIRECT
(415) 954-8517          RECEPTION
4 | (415) 449-3562          FAX
EFMLawSF@juno.com    E-MAIL
5 |
Attorneys for all plaintiffs
6 | (identified on signature page
of this document)
7 |

**E-filing**

8 | **UNITED STATES DISTRICT COURT**

9 | **NORTHERN DISTRICT OF CALIFORNIA**

10 | **SAN FRANCISCO DIVISION**

11 |

12 | ALAN J. WATSON; CASH FLOW )    Case No.
FINANCIAL, LLC, a Michigan limited )
13 | liability company; GALVESTON MATRIX )    **COMPLAINT**
DIVERSIFIED TRUST, an Ohio business )
14 | trust; and DAVID F. KLIMA, individually )    **CV 10    1394**
and in his capacity as Trustee of Galveston )
15 | Matrix Diversified Trust, )    **DEMAND FOR JURY TRIAL**
16 | )
17 |         *Plaintiffs,* )
18 |     *v.* )
19 | SOLDADO CORPORATION, a California )
corporation; GABRIEL GONZALES, JR.; )
20 | JC FUNDING SOLUTIONS, INC. a Min- )
nesota corporation; JOSE ISRAEL )
21 | CASTILLO ROBLES; BRIAN J. ENGEL; )
BJE, INC., a Minnesota corporation; )
22 | and DOES 1 through 10, inclusive, )
23 | )
24 |         *Defendants.* )
25 |
26 | ///
27 | ///
28 |

COMPLAINT
Page 1

**PARTIES AND PARTICIPANTS**

1.     Plaintiff Alan J. Watson (Watson) is a resident and citizen of the State of Michigan.  Watson is a member of plaintiff Cash Flow Financial, LLC, a Michigan limited liability company.

2.     Plaintiff Cash Flow Financial, LLC (CFF) is a Michigan limited liability company in good standing with its principal place of business at 17176 Merryweather Street, Clinton Township, Michigan 48038.  Watson is authorized by CFF and under the laws of the State of Michigan to commence and prosecute this action on behalf of CFF.

3.     Plaintiff David F. Klima (Klima) is an individual resident and citizen of the State of Ohio.

4.     Plaintiff Galveston Matrix Diversified Trust (GMDT) is a business trust organized and existing under the laws of the State of Ohio.  GMDH maintains its principal office and place of business at 16426 Nash Road, Middlefield, Ohio 44062.  Klima is the sole trustee of GMDH and is authorized by GMDH and under the laws of the State of Ohio to commence and prosecute this action on behalf of GMDH.

5.     Defendant Soldado Corporation (Soldado) is a corporation organized and existing under the laws of the State of California with its principal office and place of business located at 20 South Linden Avenue, Suite 3-B, South San Francisco, California 94080.

6.     Defendant Gabriel Gonzales, Jr. (Gonzales) is an individual resident and citizen of the State of California.  Plaintiffs are informed and believe that Gonzales resides at 257 Country Club Drive, South San Francisco, California 94080-5711.  Plaintiffs are informed and believe that Gonzales has been and is, at all material times, an officer and owner

1    of defendant Soldado, that Gonzales was and is the controlling shareholder of Soldado, and

2    that Gonzales is otherwise in control of Soldado.

3

4       7.      Defendant JC Funding Solutions, Inc. (JCF) is a corporation organized and

5    existing under the laws of the State of Minnesota with its principal offices and place of busi-

6    ness at 4607 Cedar Avenue South, Minneapolis, Minnesota 55407.

7       8.      Defendant Jose Israel Castillo Robles (Castillo) is, plaintiffs are informed and

8    believe, an individual resident and citizen of the United Mexican States (Mexico) with his

9

10    last known address in the municipality of Ahome in the Mexican State of Sinaloa. Castillo

11    was at all material times and is, plaintiffs are informed and believe, the President and Chief

12    Executive Officer of JCF.

13       9.      Defendant Brian J. Engel (Engel) is, plaintiffs are informed and believe, an

14    individual resident and citizen of the State of Minnesota with his last known residence ad-

15

16    dress at 25 East Minnehaha Parkway, Minneapolis, Minnesota 55419-2679. Engel is an at-

17    torney admitted to practice in the State of Minnesota. Plaintiffs are informed and believe that

18    Engel's law office address was and/or is located at 4607 Cedar Avenue South, Minneapolis,

19    Minnesota 55407, the same address as defendant JCF. Engel is the registered statutory agent

20    for service of process on JCF.

21

22       10.      Defendant BJE, Inc. (BJE) is a corporation organized and existing under the

23    laws of the State of Minnesota with its principal office and place of business located at 4410

24    Lake Harriet Parkway, Suite 200, Minneapolis, Minnesota 55410. "BJE" are the initials of

25    the full name of defendant Engel. Engel was, at material times, and, plaintiffs are informed

26

27    and believe, still is President of BJE. Engel is the registered statutory agent for service of

28

1  process on BJE. At material times, defendants have represented to plaintiffs that Engel's at-

2  torney trust account is maintained in the name of BJE.

3

4      11.    Defendant Does 1 through 10, inclusive, are persons or entities unknown to

5  plaintiffs who are in some way the proximate cause of the harm to plaintiffs that is the sub-

6  ject of this action.

7      12.    Plaintiffs are informed and believe that each defendant was, at material times,

8  acting as the agent or representative of each other defendant, with actual, apparent, ostensi-

9  ble, and/or implied authority to act for each such other defendant.

10

11                                    **JURISDICTION**

12      13.    This Court has subject matter jurisdiction over this action because the action

13  presents federal questions within the meaning of 28 U. S. C. § 1331. This action presents

14  federal questions arising under Section 22(a) of the Securities Act, 13 U. S. C. §§ 77u(a) and

15  under Section 27 of the Securities Exchange Act, 15 U. S. C. §§ 78u(e) and 78aa, in that

16

17  plaintiffs assert false and misleading statements made in the sale of securities and unlawful

18  sale of unregistered securities. Federal questions also are presented by plaintiffs' claims that

19  defendants violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S. C. §§

20  1861 *et seq.* by engaging in predicate acts identified in the RICO act.

21

22      14.    The court has subject matter jurisdiction over the claims pleaded under state

23  law herein in accordance with the principles of pendent jurisdiction.

24      15.    In connection with the transactions, acts, practices and course of business de-

25  scribed in this complaint, the defendants, directly and indirectly, have made use of the means

26

27

28

1 | and/or instrumentalities of interstate commerce, of the mails, and/or of the means and in-
2 | struments of transportation or communication in interstate commerce.

3 | **VENUE**
4 |
5 | 16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) in that a
6 | substantial part of the events or omissions giving rise to the claims herein asserted occurred
7 | in the County of San Mateo and, plaintiffs are informed and believe, a substantial part of the
8 | property that is the subject of this action has been and/or is situated within the County of San
9 | Mateo And/or the County of San Francisco. Venue is proper in this district pursuant to 28
10 |
11 | U.S.C. § 1391(b)(3) in that defendants Soldado and Gonzales are residents of the County of
12 | San Mateo and there is no other district in which this action may be brought consistent with
13 | principles of jurisdiction, venue, and forum non conveniens. Venue is proper in this district
14 | pursuant to Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa, in that defendants
15 | Soldado and Gonzales are residents of the County of San Mateo and Soldado does business
16 |
17 | in and maintains its principal office and place of business in this juridical district, and certain
18 | of the transactions alleged herein occurred within this district.

19 | **INTRADISTRICT ASSIGNMENT**
20 |
21 | 17.     This case should be assigned to the Court's San Francisco Division in ac-
22 | cordance with United States District Court for the Northern District's Civil L. R.s 3-2(c) and
23 | 3-5(b) because defendants Soldado and Gonzales are residents of the County of San Mateo;
24 | because a substantial part of the events and omissions which give rise to the claims herein
25 | were done or omitted to be done by such defendants within the County of San Mateo; and
26 | because plaintiffs are informed and believe that a substantial part of the property that is the
27 |
28 |

1  subject of this action has been and/or is within the County of San Mateo and/or the County of

2  San Francisco.

**GENERAL ALLEGATIONS**

18.     During the fall of and late in 2008, defendants solicited One Million Dollars

($1,000,000.00) from plaintiffs, representing to plaintiffs that the money would be used to

"lease" a yet larger sum of money (specifically, One Hundred Million Dollars

($100,000,000.00), which could then be employed and placed in an investment program that

would produce profits of $10,000,000.00 per week. In connection with the transactions, acts,

practices and course of business described in this complaint, the defendants, directly and in-

directly, have made use of the means or instrumentalities of interstate commerce, of the

mails, or of the means and instruments of transportation or communication in interstate

commerce. In doing so, defendants made the following representations:

A.     Defendants had available a source for "leasing" vast sums of

money that could be invested on behalf of and for the benefit of plaintiffs and

to their profit, and that defendants were ready, willing, and able to "lease"

$100,000,000.00 for the benefit of plaintiffs, and to invest on their behalf, if

plaintiffs would advance $1,000,000.00 to defendants;

B.     Defendants knew of and could and would provide a "trading

program" or "platform" that could produce profits of $10,000,000.00 per

week, much of which would be paid to plaintiffs.

19.     Defendants delivered to plaintiffs, with the intent of misleading and deceiving

them, documents as follows:

COMPLAINT
Page 6

1    A.    A memorandum purporting to be from senior officers of the

2    Hong Kong and Shanghai Banking Corporation (and bearing HSBC's "seal")

3    addressed to plaintiffs Watson and Klima and dated October 24, 2008 purport-

4
5    ing to confirm the existence of HSBC Account # 4465027 in which was then

6    deposited $100,000,000.00 of cleared, available funds for the express benefit

7    of Watson and Klima and over which these plaintiffs had joint signing author-

8    ity; and

9    B.    A one-page document which purported to be a print-out of an
10
11   HSBC computer screen allegedly confirming the existence of and providing

12   details about the HSBC Account #4465027 described in Paragraph 19(A)

13   above.

14   True and correct copies of these documents are attached hereto as EXHIBIT A.

15   20.   The statements and representations made by defendants as set forth in Para-
16
17   graphs 18-19 above were false, in that:

18   A.    Defendants did not in fact have a source for "leasing" vast

19   sums of money, and had no access to any source of or for $100,000,000.00

20   which could be deposited into any account for the benefit or use of Watson
21
22   and/or Klima;

23   B.    Defendants could not provide a "trading program" or "plat-

24   form" that could produce profits of $10,000,000.00 per week;

25
26
27
28

COMPLAINT
Page 7

1  C.     The purported HSBC documents were forgeries and fakes, pre-

2  pared by defendants or their agents for the purpose of misleading and deceiv-

3  ing plaintiffs.

4

5  21.    Defendants made the statements and representations set forth in Paragraphs

6  18-19 above with actual knowledge of their falsity or with reckless disregard of their truth or

7  falsity, for the purpose of inducing plaintiffs to advance funds to and invest funds with de-

8  fendants.

9

10  22.   The statements and representations by defendants were material to the deci-

11  sion by plaintiffs to advance to and invest their money with defendants, and plaintiffs rea-

12  sonably relied on them, unaware of their falsity.

13  23.   On or about October 8, 2009, Watson on behalf of plaintiffs entered into a

14  LEASE & PRIVATE PLACEMENT PROGRAM AGREEMENT (LPPPA).  A true and correct copy of

15  the LPPPA is attached hereto as EXHIBIT B, except that certain information has been redacted

16

17  to comply with controlling rules of court.  By the terms of the LPPPA, Watson, on behalf of

18  CFF, and Klima, on behalf of GMDT, were to wire a total of $1,000,000.00 to defendant

19  Engel's "Attorney Escrow Account", maintained by Engel under the name "BJE, Inc. Attor-

20  ney Escrow."  Engel was to serve as "Escrow Attorney."  One-half of such funds then were

21

22  to be transferred/credited to an account maintained by defendant Soldado at Wells Fargo

23  Bank, N. A. in San Francisco.  Soldado was to serve as the "Leasing Entity" to obtain the

24  $100,000,000.00 in bank deposits to be used for the falsely-promised investment "program"

25  or "platform."

26

27

28

24.     On or about October 9, 2008 and October 24, 2008, Watson, on behalf of CFF, wired a total of $800,000.00 to Engel's "Attorney Escrow Account" in reliance on defendants' statements and representations.

25.     On or about October 24, 2008, Klima, on behalf of GMDT, wired $200,000.00 to Engel's "Attorney Escrow Account" in reliance on defendants' statements and representations.

26.     Plaintiffs are informed and believe that one-half of the wired funds were or are deposited in an account in Wells Fargo Bank, N. A. in San Francisco in an account controlled by Soldado, Gonzales, and Engel.

27.     Execution of the LPPPA was induced by fraud. The funds wired to Engel and Soldado were obtained by misrepresentations, deceit, and fraud. No defendant has taken any action for the benefit of any plaintiff as promised by defendants.

28.     Plaintiffs have demanded the return of their funds from defendants, and defendants have failed and refused to return any of the funds.

## FIRST CAUSE OF ACTION

29.     The allegations of Paragraphs 1- 28 are realleged, in accordance with Federal Rule of Civil Procedure 10(c), as if fully set forth herein.

30.     Defendants, directly and indirectly, with scienter, by use of a means or instrumentality or interstate commerce or by use of the mails, have employed a device, scheme, or artifice to defraud; have made an untrue statement of material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or have engaged in an act, practice, or course

1 | of business which has been and is operating as a fraud or deceit upon the plaintiffs as pur-

2 | chasers or sellers of securities.

3
4 |     31.    By reason of the foregoing, defendants have violated Section 10(b) of the Se-

5 | curities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17

6 | C.F.R. § 240.10b-5.

7 |     32.    By virtue of the defendants' violation of the above provisions, plaintiffs have

8 | been damaged in the amount of $22,000,000.00.

9
10 | **SECOND CAUSE OF ACTION**

11 |     33.    The allegations of Paragraphs 1- 32 are realleged, in accordance with Federal

12 | Rule of Civil Procedure 10(c), as if fully set forth herein.

13 |     34.    This cause of action is brought under Section 22(a)(1) of the Securities Act of

14 | 1933, as amended, 15 U. S. C. § 77v(a)(1), to enforce a liability created by Section 12(a) of

15
16 | the Securities Act, 15 U. S. C. § 77l(2) and 15 U. S. C. § 77(o), respectively, arising out of

17 | the sale of unregistered securities.

18 |     35.    The business-entity defendants directly offered and sold securities, or were

19 | material participants in such sales, to plaintiffs, in the form of purported investments in

20 | "tradable Investment Grade Negotiable Bank Instruments ("BIs"), such "securities" to be

21
22 | "rated "AA" or better by Standard & Poor's" and defendants purporting to find "Exit Buy-

23 | ers" and to perform trades both to and from plaintiffs using one or more means of interstate

24 | commerce.

25 |     36.    These investments constitute unregistered securities.

26
27
28

COMPLAINT
Page 10

37. No registration statement for these securities was filed, or was in effect, in ac-cordance with federal securities requirements, and the securities were sold in violation of Section 5(a)(c) of the Securities Act, 15 U. S. C. §§ 77e(a) and 77e(c).

38. The individual defendants at all times controlled the activities of the business-entity defendants and are therefore jointly and severally liable for the violations pursuant to Section 15 of the Securities Act and Section 20A of the Securities Exchange Act, 15 U. S. C. § 77(o) and 15 U. S. C. § 78t(a).

39. On or about November 1, 2007, the Commissioner of Commerce of the State of Minnesota, by and through his Director of Enforcement, issued a CEASE AND DESIST OR-DER against defendants Engel and BJE. The Commissioner had informed Engel and BJE that he intended to commence a formal action against them for sale of unregistered investment contracts in violation of Minnesota law. Engel and BJE consented to issuance of the CEASE AND DESIST ORDER, which prohibits such sales by them. Engel and BJE are aware of the unlawfulness of the sale of unregistered securities and knowingly and willfully have engaged in a pattern and practice of such activities.

40. Plaintiffs are entitled directly to recover under this cause of action all of their investment losses against those directly engaged in the sale of the securities or those who were knowingly material participants. Plaintiffs assert each defendant was a seller or a mate-rial participant, and that each is therefore jointly and severally liable to plaintiffs under this cause of action.

///

///

1

**THIRD CAUSE OF ACTION**

2   41.   The allegations of Paragraphs 1- 40 are realleged, in accordance with Federal

3   Rule of Civil Procedure 10(c), as if fully set forth herein.

4
    42.   The fraudulent representations of defendants were made by telephone, e-mail
5
6   and other means and constituted violations of the federal wire fraud statute, 18 U. S. C. §

7   1343.

8   43.   Upon information and belief, during the same time period, defendants were

9   making similar fraudulent representations to others.

10
    44.   Therefore, defendants, through the commissions of two or more acts constitut-
11
12  ing a pattern of racketeering activity, participated in an enterprise the activities of which af-

13  fect interstate commerce.

14  45.   As a result of defendants' racketeering activities, plaintiff suffered damages in

15  the amount of $1,000,000.00.

16
    46.   Defendants are therefore liable to plaintiff in the amount of $1,000,000.00,
17
18  trebled, for a total of $3,000,000.00, together with reasonable attorney fees, pursuant to 18 U.

19  S. C. § 1962(c).

20
                              **FOURTH CAUSE OF ACTION**
21
    47.   The allegations of Paragraphs 1-44 are realleged, in accordance with Federal
22
23  Rule of Civil Procedure 10(c), as if fully set forth herein.

24  48.   As a result of the fraud of defendants, plaintiffs have been damaged in the

25  amount of $1,000,000.00.

26

27

28

COMPLAINT
Page 12

1      49.    Upon information and belief, defendants have acted willfully and in reckless

2 disregard of the rights of others, and have made similar fraudulent representations to persons

3 other than plaintiffs, as part of a fraudulent scheme or schemes aimed at the public in general.

4
5      50.    Plaintiffs should therefore have judgment against defendants for punitive

6 damages, in addition to their actual damages.

7                     **FIFTH CAUSE OF ACTION**

8      51.    The allegations of Paragraphs 1-50 are realleged, in accordance with Federal

9 Rule of Civil Procedure 10(c), as if fully set forth herein.

10
11      52.    In managing plaintiffs' funds, defendants owed them a fiduciary duty.

12      53.    Defendants violated their fiduciary duties to plaintiffs by failing to deal with

13 his funds represented and as agreed and by engaging in deceptive, misleading, and dishonest

14 conduct toward plaintiffs.

15
16      54.    As a result of defendants' breach of their fiduciary duties, plaintiffs have been

17 damaged in the amount of $1,000,000.00.

18                     **SIXTH CAUSE OF ACTION**

19      55.    The allegations of Paragraphs 1-54 are realleged, in accordance with Federal

20 Rule of Civil Procedure 10(c), as if fully set forth herein.

21
22      56.    Defendants have exercised dominion over plaintiffs funds, which at all times

23 rightly belonged to plaintiffs, having been obtained by fraud and deception, and have acted

24 contrary to plaintiffs' interests with respect to the funds, employed them for their own use,

25 purposes, and benefit, and refused to relinquish them to plaintiffs after demand for their re-

26 turn. Defendants thus have converted plaintiffs' money.

27
28

COMPLAINT
Page 13

57. As a result of defendants' conversion of plaintiffs' funds, plaintiffs have been damaged in the amount of $1,000,000.00.

**SEVENTH CAUSE OF ACTION**

58. The allegations of Paragraphs 1-57 are realleged, in accordance with Federal Rule of Civil Procedure 10(c), as if fully set forth herein.

59. Plaintiffs and defendants entered into a contract in accordance with which defendants promised and agreed to provide plaintiffs with an investment program/platform that would produce profits of $10,000,000.00 per week.

60. Execution of the contract by plaintiffs was induced by fraud.

61. Defendants afforded no consideration for plaintiffs' execution or performance of the contract.

62. If the contract is not void, defendants breached the contract by failing to provide the contracted-for investment program/platform.

63. Defendants' breaches of contract have damaged plaintiffs in an amount to be determined at trial.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs demand trial by jury in accordance with Federal Rule of Civil Procedure 38(b) and USDC-NDCA Local Civ. R. 3-6(a) as to legal claims set forth in this complaint.

///
///
///
///

COMPLAINT
*Page 14*

1    WHEREFORE plaintiffs pray for judgment against defendants, jointly and severally,

2    as follows:

3       1.      For special and consequential damages in the amount of $1,000,000.00;

4

5       2.      For general damages in an amount to be determined at trial;

6       3.      For punitive damages in an amount to be determined by the jury in relation

7              to actual damages awarded;

8       4.      For treble damages of $3,000,000.00 in accordance with 18 U. S. C. § 1962(c);

9
   5.      For reasonable attorney fees in accordance with 18 U. S. C. § 1962(c);
10

11      6.      For plaintiffs' costs of suit and interest in accordance with law; and

12      7.      For such other and further relief as to the Court may seem just and proper.

13   DATED: March 31, 2010

14

15                                LAW OFFICES OF EDWARD F. MITCHELL

16

17

18                   By

19                        Edward F. Mitchell

20                        1750 Montgomery Street
                     San Francisco, California 94111
21

22                      ATTORNEYS for plaintiffs
                   ALAN J. WATSON; CASH FLOW
23                      FINANCIAL, LLC, a Michigan limited
                   liability company; GALVESTON MATRIX
24                      DIVERSIFIED TRUST, an Ohio business trust;
                   and DAVID F. KLIMA, individually and in
25                      his capacity as Trustee of Galveston
26                      Matrix Diversified Trust

27

28

COMPLAINT
Page 15

# HSBC ◀X▶

## The Hong Kong and Shanghai Banking Corporation
**Ultimate Holding Company : 8 Canada Square London E14 5HQ**
**Phone (44) 020 7991 8888, Fax (44) 020 7992 4880**
**United Kingdom**

OCTOBER 24TH, 2008

**FROM:** THE HONG KONG AND SHANGHAI BANKING CORPORATION

**TO:** DAVID F. KLIMA
      ALAN JAMES WATSON

**SUBJECT:** ACCOUNT NUMBER: 4465027

DEAR SIRS:

WITH REFERENCE TO YOUR RECENT REQUEST, WE THE HONG KONG AND
SHANGHAI BANKING CORPORATION UK, CONFIRM THAT THE ABOVE-
MENTIONED ACCOUNT OF DAVID F. KLIMA, ALAN JAMES WATSON, HAS A
CURRENT CASH DEPOSIT BALANCE OF ONE HUNDRED MILLION DOLLARS
($100,000,000.00 USD) WITH THE JOINT SIGNING AUTHORITY BEING JOSE
ISRAEL CASTILLO ROBLES, DAVID F. KLIMA, ALAN JAMES WATSON &
GABRIEL GONZALEZ JR.

WE ALSO CONFIRM THAT THESE FUNDS ARE GOOD CLEAN, CLEARED
FUNDS, OF NON CRIMINAL ORIGIN, EARNED FROM LEGAL SOURCES, FREE
OF ANY LIENS OR ENCUMBRANCES, AND FREELY AVAILABLE FOR
INVESTMENTS AND / OR TO OBTAIN CREDIT LINES FOR THE USE AND
BENEFIT OF DAVID F. KLIMA, ALAN JAMES WATSON.

FINALLY, WE CONFIRM THAT THESE FUNDS AND THIS COMMUNICATION
MAY BE CONFIRMED ONLY ON A BANK TO BANK BASIS, ON DTC /
EUROCLEAR SCREENS RELATED TO THE REFERRED ABOVE BANK
ACCOUNT.

A SCANNED COPY OF THIS LETTER SENT VIA E-MAIL IS DEEMED AS
ORIGINAL.

**THE HONG KONG AND SHANGHAI BANKING CORPORATION**

BANK OFFICERS:
MICHAEL F. GEOGHEGAN
SK859-6597PK
DAVID H. HODGKINSON
GK847-5843MR

**Michael F. Geoghegan**
*Chairman*

**David H. Hodgkinson**
*Chief Executive Officer*

**EXHIBIT**

$A$

Euroclear portal/bank_access/in

http://www.euroclear.com/wps/portal/hsbc/screen_department/472618···'·853211ag2

# HSBC ◆X◆

FROM EUC 44585
THE HONG KONG AND SHANGHAI BANKING CORPORATION UK
8 CANADA SQUARE LONDON E14 5HQ, UK
ORIGIN FUNDS: XS089926950
COMMON CODE: 089926950
NOMINAL CURRENCY €
EXCHANGE INTERMEDIARY EUROCLEAR BELGIUM
INTERBANK SCREEN ACCOUNT 44585
THE HONG KONG AND SHANGHAI BANKING CORPORATION UK
FOR BENEFIT OF DAVID F KLIMA AND ALAN JAMES WATSON
CREATE SCREEN PROOF OF FUNDS DATE: OCTOBER 24TH 2008
VALUE DATE: OCTOBER 26RD 2008
SUB-ACCOUNT: 446027
REGISTER NUMBER: BH159027
T.R.N. 44027
ISSUED DATE: OCTOBER 24TH 2008
MATURITY DATE: NOVEMBER 25TH 2009
EXPIRATION DATE: DECEMBER 19th 2009
INTERBANK ISIN. XS258367027
OPERATION COMMON CODE: 041597427
CUSIP NUMBER: BH78947027
ACCESS CODE: H.B.C.P F027*HB
CURRENCY USD
AMOUNT 100,000,000.00
VALIDITY CODE: HSBCBF7027J
BENEFICIARY: DAVID F. KLIMA AND ALAN JAMES WATSON
D.V. 26/10/08
O.P HSBC6s74HS8CGB

SCREEN DEPARTMENT/ACCESS/51284***/**·I.N.S.C.G.B 53**
SCREEN FROM EUC  WWW.EUROCLEAR.COM .- HSBC/ACCESS

Transaction Code: GFHJCFAJW/10082008
Collateral Code: HSBC100200

## LEASE & PRIVATE PLACEMENT PROGRAM AGREEMENT

This Agreement is entered into this 08th day of October, 2008 by and between JC Funding Solutions, Inc., whose principal place of business is, Minneapolis, Minnesota, USA, ("JCF") and Alan J. Watson, whose principal place of residence is Clinton Township, Michigan, USA ("Participant").

**Whereas,** JCF has expended significant sums of money and a considerable amount of time developing professional relationships in the financial industry. This has resulted in JCF having a capacity to access certain leasing and private placement opportunities with financial institutions and private parties. It is anticipated these opportunities, if successful, could achieve significant yields through the purchase and resale of financial instruments issued by recognized financial institutions; and

**Whereas,** Participant has represented to JCF to be a sophisticated person by any applicable standard, and desires to enter into this Agreement to accomplish certain financial goals. Participant has, either through instruction, advice, or other representation, acquired sufficient knowledge regarding the proposed Transaction, as described below, to make a reasonable determination as whether or not to enter into this Agreement; and

**Whereas,** Participant has declared that it has available for the Transaction One Million United States Dollars ($1,000,000.00 USD), as evidenced by a Tear Sheet; and

**Whereas,** Participant will wire transfer the above referenced amount to the designated Attorney Escrow account upon signing this Agreement; and

**Whereas,** the Parties acknowledge and agree that this Agreement shall serve as a final agreement between the Parties. The terms of this Agreement shall supersede all previous agreements, written and verbal, between the Parties.

**Whereas,** JCF, via the Trading Entity, declares that it has arranged for the leasing of a financial instrument/Proof of Funds (PoF), to be solely used in the Transaction, which is to purchase an allocation of tradable Investment Grade Negotiable Bank Instruments ("BIs"). Said securities are rated "AA" or better by Standard & Poor's. JCF, via the Trading Entity, has also arranged the resale of the BIs to qualified Exit Buyers <u>or</u> to enter a private placement program; and

**Whereas,** both Parties are interested, fully capable and prepared to cooperate and assist each other in the implementation and completion of the Transaction, especially regarding the leasing of financial instruments, purchase and sale, directly and/or indirectly, of BIs, issued by Top 25 Western European Banks, with normal exclusions, <u>or</u> to enter a private placement program; and

**Whereas,** JCF and Participant desire to broaden and develop their financial activities and special investment services and are desirous of entering into this Agreement in order to avail themselves of the proposed Transaction, under terms and conditions acceptable to the Parties in this Agreement. Participant hereby authorizes JCF to execute any agreements, wire transfers, SWIFTs, Letters of Intent, or other such documents that may be required to further the Transaction.

**EXHIBIT**

B

1

Transaction Code: GFHJCFAJW/10082008
Collateral Code: HSBC100200

**NOW THEREFORE,** in consideration of the promises and covenants set forth herein, the mutual benefit of such being fully acknowledged, the Parties hereto agree as follows:

## PURPOSE

1. OVERVIEW OF TRANSACTION
   A. After this Agreement is executed and Participant wires the required funds to the designated Attorney Escrow Account, JCF will arrange the leasing of the PoF, for use in the Transaction. Once the lease is completed a line of credit against the PoF will be attain, at an LTV of 50% of the face value of the leased PoF, for the benefit of Participant. These funds will then be placed in the Private Placement Program. The up front cost of the lease shall equal one percent (1%) of the face value of the leased PoF. Participant shall wire transfer this amount to the designated Attorney Escrow Account upon signing this Agreement. The estimated time to complete the leasing and trade set up is within 30 days; from the date said funds are posted in the Attorney Escrow Account.
   B. After the funds are posted in the designated Attorney Escrow Account, one-half of the funds will be wire transferred to the Leasing Entity, Soldado Corporation. Said funds will be utilized to set up a new bank account in Participant's name and to make arrangements for the acquisition of the leased PoF, to be used in the Transaction.
   C. Both Parties will be made a signer on the account and be provided a copy of the leased PoF. Both Parties acknowledge they will not have the authority to make a withdrawal from said account. Said account is only a transaction account for the trade program.
   D. After Participant is provided a copy of the leased PoF, the remaining one-half of the one percent (1%) set up fee will be wire transferred to the Soldado Corporation bank account.
   E. Once said wire posts in the Soldado Corporation account, the leased PoF will be sent via SWIFT MT760 to the Credit Line Provider (CLP).
   F. Shortly after the receipt and confirmation of the MT760 by the CLP, CLP will release the credit line for the trade program. The trade program will start on the first Monday following the release of the credit line. The program will trade Monday through Thursday of each week for 40 weeks.
   G. An additional lease fee of 18% of the face value of the leased POF is due and payable within 30 days. Therefore, an additional fee of $18,000,000.00 will be due from the trade profits. The Parties agree to pay this fee, in equal installments, over the first three (3) weeks of the Program. Hence, $6,000,000.00 will be deducted from the each of the first three (3) weeks of trade profits and paid directly to the Leasing Entity, Soldado Corporation.

JCF agrees to use its best efforts to enter into a valid contract to purchase BIs and arrange for a qualified Exit Buyer to purchase the BIs at a price greater than the purchase price or enter a private placement program. The profits are to be distributed at designated times to designated accounts.

BANK ACCOUNT: ATTORNEY ESCROW ACCOUNT:

| | |
|---|---|
| Bank Name | Charter One Bank |
| Bank Address: | 15341 – 19 Mile Rd., Clinton Township, MI. 48038 |
| Bank Officer: | Denise L. Devault |
| Bank Ph. / Fax: | 586-286-4710 / 586-286-4009 |
| Account Name: | Alan James Watson |
| Account Holder Address: | 17176 Merryweather, Clinton Township, MI. 48038 |
| Account Number: | 4512006086 |
| ABA/Routing #: | 241070417 |
| SWIFT Code: | CTZiU533 |

Transaction Code: GFHJCFAJW/10082008
Collateral Code: HSBC100200

ESCROW INSTRUCTIONS:
1. Participant wire transfers the one percent (1%) fee to the designated Attorney Escrow Account.
2. Upon receipt of said fee, Attorney shall wire transfer one-half of the fees to the designated account of the Leasing Entity, Soldado Corporation.
3. Participant and Escrow Attorney will be provided a copy of the leased PoF.
4. Upon receipt of the copy of the PoF, Participant shall instruct the Escrow Attorney to wire transfer the remaining one-half of the fee to the designated account of the Leasing Entity, Soldado Corporation.

BANK ACCOUNT: **Soldado Corporation:**
Bank Name: Wells Fargo Bank, N.A.
Bank Address: San Francisco, CA
Bank Officer: Lauren A. Hawks, Manager
Bank Ph. / Fax: 612-316-1963 / 612-316-1959
Account Name: BJE, Inc. Attorney Escrow
Account Holder Address: 4607 Cedar Ave. S., Minneapolis, Minnesota 55407
Account Number: 5127139193
ABA/Routing #: 121000248
SWIFT Code: WFBIUS6S
FBO: Alan J. Watson / Soldado Corporation / JCF

2. PROFITS AND FEES
It is agreed between the Parties that JCF, via Trading Entity, will use its best efforts to furnish the Exit Buyers at the highest possible price allowed by the market, thereby providing a possible return to the Participant. The estimated weekly return due Participant from the program is Ten Million USD ($10,000,000.00 USD), surfeit to JCF.

The Participants $10,000,000.00 to be split as follows:

|  |  |  |
|---|---|---|
| 80% | $ 8,000,000.00 | Alan J. Watson |
| 20% | $ 2,000,000.00 | David F. Klima |

There shall be 40 weekly payments during the Transaction. Participant will be paid its profits, herein stated, within 2 banking days of each weekly Program payout. Participant will provide the banking coordinates for where it chooses each payout to be wire transferred.

3. INTERMEDIARY AND FEES
The Parties agree that each Party shall be responsible for paying their respective Intermediaries. It is agreed that the Paymaster for all Intermediaries will be The Ferro Group, LLC. There is 5% that will be paid to all Intermediaries.

4. NON-SOLICITATION
The Participant hereby swears that this Agreement is in direct response to a request made to JCF by the Participant and is not in any way to be considered or intended to be a solicitation of funds on behalf of JCF, or any sort or type of offering. The Participant hereby affirms that it has requested JCF provide it with a personal service and that it has entered into this agreement of its own free will and choice. The Participant acknowledges that any Transaction considered is one of Private Placement and is not subject to the United States Securities Act of 1933 and/or as amended, or subject to any securities laws of any other country and is intended for private use only. The

Transaction Code: GFHJCFAJW/10082008
Collateral Code: HSBC100200

Participant also acknowledges that JCF has disclosed they are not a licensed securities trader, bank
officer, financial planner, attorney or certified public account.

5. PROTECTION OF SOURCES AND NON-CIRCUMVENTION
Neither Party shall not make contact with any organization, company, bank, affiliate, or individual
who will become known to them through the other Party and/or its Associates, except upon
notification and consent of the other Party and/or Associates for a period of five (5) years.

The President of the United States, in signing H.R. 3723 on October 11, 1996, has authorized this
Agreement by giving corporations the right to declare their contracts, client, internal procedure and
information, and the transactions they engage in as corporate or trade secrets fully protected under
the Economic and Industrial Espionage Laws of the United States and the International Economic
Community.

All Parties agree to accept the said provisions of the ICC Model Clauses and the standards of the
International Chamber of Commerce regarding the Non-Circumvention and Non-Disclosure,
together with Force Majeure, are deemed included in this document and thereby forms an integral
part of this agreement, which shall be deemed, incorporated by reference.

This Agreement shall also bind both Parties' directors, officers, employees, agents, companies,
heirs, successors, assigns, affiliates, and both Parties shall have an affirmative duty to incorporate
all relevant terms into any agreements with funding sources which may be affected by its purpose.

6. CHOICE OF LAW AND ARBITRATION:
The Laws of the United States of America shall govern this Agreement. Jurisdiction shall lie with
an arbitrator nominated by the court in conformity with the arbitration rules of the International
Chamber of Commerce Paris or the American Arbitration Association in Minnesota. No State
Court of any nation shall have subject matter jurisdiction over matters arising under this
Agreement. This Agreement contains the entire agreement between the Parties. Any amendments
thereto must be made in writing.

7. OBJECTIVES OF THE PRIVATE PLACEMENT OPPORTUNITY
JCF will use its best efforts to provide a managed buy sell contract of bank instruments or enter a
private placement program.

8. DISBURSEMENT PAYMENT OBLIGATION
For value received and derived from the Transaction as identified above, the nominated account
instructed by JCF on behalf of the Parties, shall irrevocably and unconditionally, without protest or
notification, disburse and pay all parties to be paid, the agreed sum as stipulate above. Such
payments shall be made without set-off and shall be free and clear of any deductions or charges of
any nature. Each Party is responsible for their own taxes and expenses.

9. COMMERCIAL & BANKING SECRECY
The international regulations on commercial and banking security shall be strongly applied for the
Transaction. The Parties involved having the benefit of any financial product derived from this
Transaction shall keep full control of any information pertaining to this Transaction. This is a
confidential document and it may not be distributed or reused by any persons who received it.

4

Transaction Code: GFHJCFAJW/10082008
Collateral Code: HSBC100200

I, under penalty of perjury, with full corporate and individual responsibility, irrevocably confirm
that neither myself nor anyone associated with my organization, corporation or individual
investment are working for any agency of any government, nor are members of any law
enforcement agency. I further state under penalty of perjury that I'm not involved in any
government "sting" operation.

FURTHER, the undersigned signatories do hereby attest and warrant to the fact that to the best of
their knowledge no Specially Designated National, Blocked Person, Entity or Embargoed County,
State, Nation, or Entity, as recognized by the Government of the United States, are now or
knowingly will hereafter be party to, or share in the benefit from any, and all, transaction(s) by and
between said Parties. Further, no Party involved in the transactions, or funds, or Instruments,
utilized in, or generated by, the Transactions as are contemplated, which shall be under their
individual control, shall be used to provide funds, instruments or any support to any terrorist
activity or act(s) of war.

This Agreement pertains to any and all current and contemplated business, professional documents
and proprietary information provided by either party to the other party hereunder, those parties
being identified below.

This document constitutes the entire agreement by and between the Parties.

IN WITNESS HEREOF, THE PROMISES AND COVENANTS CONSIDERED, the undersigned
have executed this Agreement this 08th day of October, 2008.

Accepted and Agreed By: JC Funding Solutions, Inc.

Dr. José Israel Castillo Robles
Title: President-CEO

Lic. Francisco Páez Bojórquez
Notario Publico No. 37
October 08, 2008

Accepted and Agreed By: Participant

Witness:

Name: Alan J. Watson
Title: Funds Owner

Name: David F. Klima
Title: JV Partner

5